STATE OF MINNESOTA v. FRANK HOSKINS.[1]

February 1, 1895.

No. 8944.

**Criminal Libel—Indictment.**

A libel on two or more persons (although not associated together in business), contained in a single writing, and published by a single act, constitutes but one offense.

Case certified from the district court for Otter Tail county.    Defendant demurred to an indictment for libel, and the demurrer was overruled, Baxter, Searles, JJ.    Affirmed.

*F. W. Zollman,* for appellant.

*H. W. Childs* and *Geo. B. Edgerton,* for the State.

MITCHELL, J.[2]    Although the trial court has in form certified all of the seven specific objections made to the indictment in defendant's demurrer, yet his counsel refers to only two of these in his brief, and of these two only one is worthy of any consideration, viz. does the indictment charge more than one offense?    The defendant was indicted for a libel on three national banks (not in any way associated with each other in business), the libel against all three being contained in a single writing, published at one time, and by a single act.    Defendant's contention is that this constitutes three separate offenses,—one against each bank libeled; and he likens it

to a case where a person by a single act murders two or more persons. Without stopping to consider whether a person might not be indicted in the same count for any misdemeanor, such as assault, committed on two or more persons by a single act, we think that the case suggested by counsel is not analogous. His argument proceeds upon the false assumption that the gist of the crime of libel is the injury to the reputation of the person libeled. It is true that no publication is indictable unless it exposes the person of whom it is published to hatred, contempt, etc., or has a tendency to injure him in his business, but the indictability of the act does not come alone from harm to his reputation. The general policy of the law is to leave the care of men's reputations to themselves. No damage done to a reputation (at least, unless the further element of conspiracy enters into the act) is, at common law, in and of itself, a foundation for a criminal prosecution. The law makes the publication of a libel punishable as a crime, not because of injury to the reputation, but because the publication of such articles tends to affect injuriously the peace and good order of society. This has always been recognized as the reason why libel is a public wrong. For example, Starkie says: "It may consist in the tendency of the communication to weaken or dissolve religious or moral sentiments, or to alienate men's minds from the established constitution of the state, or to engender hatred and contempt of the king or his government or the houses of parliament or the administration of public justice, or in general to produce some particular inconvenience or mischief, or to excite individuals to the commission of a breach of the peace, or other illegal acts." Bishop defines libel as "any representation in writing," etc., "calculated to create disturbances of the peace, to corrupt the public morals, or to lead to any act which, when done, is indictable." 2 Bish. Cr. Law, § 907. Of course, these common-law definitions are not in all respects applicable under our Criminal Code, but they are fully in point as illustrating the gist of libel considered as a crime. It is on the same principle, and for the same reason, that it is made a misdemeanor to publish anything which exposes the memory of any deceased person to hatred, contempt, etc. It cannot injure the dead man, but it tends to create a breach of the peace by inciting his surviving friends to avenge the insult of the family. At least such is the reason usually given in the books. The publication of a

libel produces public mischief, and it is for that reason that it is an indictable offense. The more persons affected by the libel, the greater the public wrong; but one act of publication, however many persons are affected by it, constitutes but one crime, although each of the parties injured by it may bring a civil action for damages. The gist of the offense of libel is the publication of something which tends, in contemplation of law, to affect injuriously the peace and good order of society, because it injuriously affects the reputation, memory, or business of individuals. In the case of homicide suggested by counsel the gist of the offense is the taking of human life. It is that, and not the particular means by which it is accomplished, which the law forbids. If it be suggested that, where the libel affects more than one person, the defendant may desire to prove different lines of defense as to each, and therefore there should be a severance of the charge, our answer is that we see no difficulty in the defendant proving, under a plea of not guilty, any defense which he has. Of course, the defense must be as broad as the charge, but, if it is more difficult to establish the defense where several persons are libeled in one publication, that is the consequence of the defendant's own act. See 2 Bish. Cr. Law, § 888, and note. There are very few authorities directly in point on this question, for it seems to have been very rarely raised, it being apparently generally assumed that such an indictment was good; as, for example, in Crowe v. People, 92 Ill. 231. Bishop lays it down as the law. 1 Bish. Cr. Proc. § 437. So, also, does the supreme court of Kentucky, in Tracy v. Commonwealth, 87 Ky. 578, 9 S. W. 822, the only case we have found in which the rule was ever questioned.

Order affirmed.

COLLINS, J. (concurring). My first impressions were that upon principle as well as upon authority it would have to be held that the indictment charged more than one offense. But when we reflect that the gist of the offense of libel is the publication of something which tends, in contemplation of law, to injuriously affect the good order and peace of society, because of the injurious effect it has upon the reputation or business or memory of individuals, we are obliged to admit that upon principle it cannot be claimed that more than one offense was alleged. And in respect to the authorities it

may be stated that we are not cited to one authority, and we have found none, which supports the contention of defendant's counsel. The right of the prosecution to charge a libel published, as this is alleged to have been, reflecting on two or more persons, as a single offense, seems to have generally gone unchallenged. Whenever the question has been raised, the courts have sustained the practice adopted in this case. For these reasons, I concur in the views expressed in the main opinion.

CANTY, J. (dissenting). I cannot agree to the foregoing opinions. It seems to me that this is a crime against the person. Section 211 of the Penal Code provides: "A malicious publication by writing, printing, picture, effigy, sign, or otherwise than by mere speech, which exposes any living person or the memory of any person deceased, to hatred, contempt, ridicule, or obloquy, or which causes or tends to cause any person to be shunned or avoided, or which has a tendency to injure any person, corporation, or association of persons in his or their business or occupation, is a libel." The gist of the action is the injury to the corporation in its business, and not an injury to the good order of society in general. This more clearly appears after the trial begins. It immediately assumes the form of three actions on trial together, and having, perhaps, nothing in common except that they are all against the same defendant, and all arose at the same time, the issues and evidence in each being totally distinct and dissimilar. As to one bank, he may justify by attempting to prove the truth of the charge, and his good motive; as to another bank, he may attempt to prove a sufficient excuse under that part of section 213 which provides that "the publication is excused when it is honestly made, in the belief of its truth, and upon reasonable grounds for this belief, and consists of fair comments upon the conduct of a person in respect of public affairs"; as to the third bank, he may offer proof both of justification and excuse. Supposing the jury acquit him of libeling the first bank, but cannot agree as to the other two. Should the court refuse to receive such verdict, and discharge the jury for failure to agree, or should the court receive the verdict of acquittal as to one bank without an agreement as to all? Most certainly it should. Will this amount to an acquittal as to the other two banks? Certainly

not. Supposing the defendant should request a return of three verdicts, one as to each bank, or, what would be the same, a distinct finding of guilty or not guilty as to each bank, and the trial court should refuse such request, should a general verdict of guilty be allowed to stand? It might be that four of the jurors believed the defendant guilty as to the first bank, four others believed him guilty as to the second bank, and four others as to the third bank, while as to each bank eight jurors believed him not guilty, yet, by treating the libel of the three banks as one offense, the twelve jurors would vote to find the defendant guilty. Clearly, to prevent such an outrageous result, it would be the duty of the trial judge to instruct the jury to treat the libel as to each bank as a separate and distinct charge, and vote on it separately. It is true that the separate character of each charge does not so readily appear until the defense opens its case on the trial, but this is because the state has so little to prove in the first instance, and that proof happens to be the same as to each case; the burden of proof, except as to publication, being thrown on the defendant. To hold that this indictment charges but one offense, and not three offenses, is to sacrifice substance to form. That there once were, and may yet be, criminal libels that were not offenses against the person, does not prove that this is not such an offense. If these three banks, taken together, constituted an "association of persons," within the meaning of section 211, and they were libeled in their associated capacity, it would constitute but one offense. But this is not such a case. I am of the opinion that the indictment charges three separate offenses, and that the order overruling the demurrer should be reversed.