## GULLY, *alias* BRIDGES, *v.* THE STATE.

116  527
116  545
116  881
116  527
119  436
116  527
122  732
116  527
e124  449

1. An acquittal under an indictment charging that the accused committed bigamy by contracting an unlawful marriage with "Gussie Shingler" will not be a bar to a prosecution subsequently instituted under an indictment charging that, on the same date as that named in the first indictment, the accused committed bigamy by contracting an unlawful marriage with "Bessie Shingler," especially when it appears that at the time upon which the marriages were alleged to have taken place there were in life persons answering to the names both of Gussie and Bessie Shingler. The above is true notwithstanding it appears that the witness who testified before the grand jury, by mistake, gave the name of Gussie Shingler when he intended to give that of Bessie, and that the name of Gussie was inserted in the indictment under a misapprehension growing out of this mistake of the witness, there having been but one marriage and it having been in fact contracted with Bessie and not Gussie.
2. Where objection is made to specified evidence as a whole, part of which is admissible, and part inadmissible, and the objection does not point out the objectionable portion, there is no error in admitting the entire evidence.

*Argued October 22,—Decided November 12, 1902.*

Indictment for bigamy. Before Judge Spence. Decatur superior court. June 28, 1902.

*W. D. Sheffield*, by *Z. D. Harrison*, for plaintiff in error.
*W. E. Wooten, solicitor-general*, by *R. R. Arnold*, and *Donalson & Fleming*, contra.

COBB, J. R. C. Gully, sometimes known as C. R. Bridges, was placed upon trial charged with the offense of bigamy, the indictment charging that on November 7, 1901, the accused married one Bessie Shingler, his lawful wife, Annie Bridges, being then in life, which fact was known to him. The accused filed a special plea setting up that at a previous term an indictment had been preferred against him, charging him with the offense of bigamy, in that on November 7, 1901, he had married one Gussie Shingler, his lawful wife, Annie Bridges, being then in life, which fact was known to him; that he was arraigned on this indictment, and pleaded not guilty; and that the trial resulted in a verdict of acquittal; a copy of the proceedings being attached to the plea. It is alleged that the offense charged in the indictment in the present case is the same as that charged in the indictment upon which the accused was previously indicted; that the present indictment charges identically the same and only the offense charged in the former indictment; that in order to convict upon the present charge it would be necessary

to introduce the same evidence, without any additional facts, as was produced upon the trial under the former indictment; that the finding of the jury at the former trial was upon the same evidence and issue that would be had and made in the present case, and none other; that while the former indictment charged that the accused committed the offense of bigamy by marrying Gussie Shingler, and the present indictment alleges that he committed the offense by marrying Bessie Shingler, still both indictments relate to the same unlawful marriage, and both allege the same date upon which the marriage took place, the only difference in the allegations in the two indictments being in the name of the person with whom the marriage was alleged to have been contracted. It appeared from the evidence that there were two Shingler sisters, one named Gussie and the other Bessie; that no marriage had taken place between Gussie and the accused, she herself being married to another on the date she was alleged in the indictment to have been married to the accused, and that the only unlawful marriage contracted by him was the one with Bessie Shingler. The name of Gussie appeared in the first indictment as the result of a mistake made by a witness who testified before the grand jury, the witness intending to give the name of Bessie instead of that of Gussie. The accused entered a plea of not guilty upon the indictment, and the issue raised by this plea and that raised by the special plea were submitted to the same jury, by whom a verdict was returned finding the accused guilty, thus in effect finding against the special plea. The accused filed a motion for a new trial upon various grounds. The motion was overruled, and he excepted. The only grounds of the motion which were insisted on in this court were those which alleged in substance that the verdict, so far as it amounted to a finding against the special plea, was contrary to evidence, and one ground which assigned error upon the admission of certain testimony.

1. It is contended that under the evidence the jury should have found in favor of the special plea setting up former acquittal, for the reason that the offense involved in the present case was the same as that for which the accused had been placed on trial and acquitted. To entitle the accused to plead successfully former acquittal the offenses charged in the two prosecutions must have been the same in law and in fact; and while there is no infallible test

that can be applied in all cases for determining the identity of the offenses charged in the different indictments, it has been said that it is a rule of almost universal application that if the facts required to support the second indictment would have been sufficient, if proved, to procure a conviction under the first indictment, the offenses are identical. See 17 Am. & Eng. Enc. Law (2d ed.), 596–7. See also 1 Arch. Cr. Pr. & Pl. (8th ed.), top p. 341. The rule above referred to is that which is sometimes called "the same-evidence test." There is also another rule, which declares that if the prosecution under the second indictment involves the same transaction which was referred to in the former indictment, and it was or might have properly been the subject of investigation under that indictment, an acquittal or conviction under the former indictment would be a bar to a prosecution under the last indictment. This rule is sometimes called "the same-transaction test." The latter rule has been the one adopted and generally followed in this State. In *Roberts* v. *State*, 14 *Ga.* 8, Judge Starnes, after stating that there seemed to be some difficulty about applying in all cases the rule known as the same-evidence test, says : "To avoid any confusion on this subject, we adopt the rule as it is otherwise more generally, and perhaps more accurately, expressed, viz.: that the plea of *autre fois acquit* or *convict* is sufficient whenever the proof shows the second case to be the same transaction with the first." The rule thus laid down was applied in the following cases: *Holt* v. *State*, 38 *Ga.* 187; *Jones* v. *State*, 55 *Ga.* 625; *Buhler* v. *State*, 64 *Ga.* 504; *Goode* v. *State*, 70 *Ga.* 752; *Knight* v. *State*, 73 *Ga.* 804; *Knox* v. *State*, 89 *Ga.* 259. See also, in this connection, *Crocker* v. *State*, 47 *Ga.* 568; *Johnson* v. *State*, 65 *Ga.* 94 (2) ; *Craig* v. *State*, 108 *Ga.* 776; *McWilliams* v. *State*, 110 *Ga.* 290.

If the two prosecutions really involve the same transaction, the fact that the offense charged in the second indictment is by name a different offense from that which is set forth in the first does not prevent a judgment under the first from being a bar to the second prosecution. *Holt* v. *State*, supra. On the other hand, if the two offenses are nominally the same but are substantially different, a judgment in one will not be a bar to a prosecution in the other. *Brown* v. *State*, 85 *Ga.* 713 (3). It has also been held that where a person has been put in jeopardy of a conviction of an offense which is a necessary element in and constitutes an essential part of

another offense, such jeopardy is a bar to a subsequent prosecution for the latter offense, if founded upon the same act. *Bell* v. *State,* 103 *Ga.* 397. See also *Copenhaven* v. *State,* 15 *Ga.* 264; *Pat* v. *State,* 116 *Ga.* 92. In *Blair* v. *State,* 81 *Ga.* 629, it was held that the true rule is, if the evidence required to convict under the first indictment would not be sufficient to convict under the second indictment, but proof of additional facts would be necessary to complete the offense charged in the second indictment, the former conviction or acquittal could not be pleaded in bar of the second. In that case a conviction for selling liquor without a license was upheld, notwithstanding the accused had been convicted on another indictment of selling liquor to a minor, the two cases involving the same sale. This case apparently applies the same-evidence test and disregards the same-transaction test. The ruling in the Blair case was followed in *Smith* v. *State,* 105 *Ga.* 724. See also *Copenhaven* v. *State,* supra. What was said in *Bryant's* case, 97 *Ga.* 105, in reference to the same-evidence test being the true test as to whether a plea of former acquittal or conviction should prevail, was obiter; the ruling in that case being entirely consistent with the rule known as the same-transaction test. Without reference to which is the sounder rule, the same-evidence test or the same-transaction test, the latter has been, since the decision in the 14 *Ga.,* generally accepted as the rule in this State. Under this rule it becomes necessary in each case to determine whether both indictments and the investigations that may be had thereunder relate to the same offense; that is, in order to successfully defeat a prosecution under the last indictment it is incumbent upon the accused to identify the offense charged in the second indictment with that which was, or could have been, made the subject of investigation under the first indictment. In *Sweeney* v. *State,* 16 *Ga.* 468, Judge Benning said : "But in all pleas of former acquittal or former conviction, the proof of the plea has to consist partly of matter of record and partly of matter not of record. And the identity of the two cases is the part of the plea which it is the peculiar business of the evidence which is not of record to make out."

In determining whether the two offenses are identical we must not look to the indictment alone or to the proof alone, but to both the proof and the indictment. If the evidence offered under the issue formed upon the special plea shows that no other transaction

than that sought to be investigated under the second indictment could have properly been the subject of investigation under the first, then an acquittal under the ·first indictment would be a bar to a prosecution under the second, notwithstanding the fact that there could not have been a conviction under the first indictment for the reason that the proof offered in support of it failed to establish allegations descriptive of the offense, ordinarily immaterial but which the pleader had made material by averment. Thus it was held in *Buhler's* case, supra, that where the accused had been indicted for stealing a cow which was the property of H., and had been acquitted, and he was again indicted for stealing a cow which was the property of H., the description being different from that alleged in the first indictment, and it appeared on the trial that H. had only one cow and this cow was the one referred to in both indictments, and the testimony in each case related to this cow, a verdict finding against the plea was contrary to law. And in *Goode's* case, supra, it appeared that the accused was tried and acquitted under an indictment charging him with larceny from the house and alleging ownership of the house and the goods stolen in the prosecutor, and was subsequently arraigned upon another indictment for larceny from the house, the indictment alleging a different ownership of the house and the goods stolen. It was held that a plea of former acquittal which set out fully the first indictment and the proceedings had thereon, and averred that the transactions embraced in both indictments were one and the same, was improperly stricken on demurrer. To the same effect was the ruling in *Knight's* case, supra. In all of these cases it appeared that the indictment referred to the same property and the same theft, and that the theft referred to in the first indictment in each case could have been·properly investigated thereunder, although, on account of a variance in regard to description in identity of the property or ownership, a conviction could not be had. If it had appeared from the second indictment in the *Buhler* case that the animal alleged to have been stolen was and could not have been the same animal referred to in the first indictment, then of course no proceedings under the first indictment would have affected a prosecution under the second; that is, to take an extreme case, if it had appeared in the first indictment that Buhler was charged with having stolen a cow, and in the second indictment with stealing a bull, then no proceedings had under

the first indictment would affect the right of the State to prosecute under the second; and this would be true notwithstanding it appeared from the evidence upon the issue formed upon the special plea setting up former acquittal that the draftsman of the indictment by mistake described the animal as a bull when it should have been described as a cow. *Goode's* and *Knight's* cases are subject to a similar explanation. The ruling in the *Knox* case, supra, was based upon the ruling in the three cases just referred to, and even if it is not subject to the same explanation as the other cases, it was a decision by two Justices only, and is not controlling as authority.

In the present case the first indictment charged an unlawful marriage with Gussie Shingler. The proof showed that there was such a person as Gussie Shingler. But whether this was so or not, under the first indictment there could not have been a legal investigation in reference to an unlawful marriage by the accused to any other person than the one named in the indictment. Evidence of a marriage by the accused with Bessie Shingler would not have been admissible under the first indictment. While the offense charged in each indictment is the same in general terms, that is, bigamy, an unlawful marriage to a particular person is an essential element in this offense, and the allegation and the proof in reference to this person must correspond. The offenses charged in the two indictments are not, therefore, identical. In the absence of any evidence at all, the indictments on their face show that they could not involve the same transaction. In the light of the evidence that Gussie Shingler and Bessie Shingler were separate and distinct persons, the view is strengthened that it was impossible under the first indictment to investigate the subject of a marriage by the accused with any other person than the one therein named. It is immaterial whether we apply the same-transaction test or the same-evidence test; the finding against the special plea was proper. The additional-fact test and the essential-ingredient test, which have been alluded to above, have no application to a case of the character now under consideration. It is immaterial what the pleader intended when the indictment was drawn. It is also immaterial what the grand jury intended when they found the first indictment. It is immaterial that both the pleader and the grand jury had in mind but one marriage, and that the indictment in-

tended to charge that this marriage was contracted. Under the indictment as it was framed, no other transaction could have been properly the subject of a legal investigation than an unlawful marriage between the accused and Gussie Shingler. An unlawful marriage with Bessie Shingler was a separate and distinct transaction from the alleged marriage between him and Gussie Shingler. The finding against the plea of former acquittal was demanded by the evidence offered to support the same.

2. The only other question argued in the brief of counsel for the plaintiff is that raised upon an objection to the admission of evidence set forth in the fourth ground of the motion for a new trial. The evidence objected to was as follows: Lawrence, a witness for the State, testified: "I found a woman and seven children near Lemay, North Carolina, and I called upon her, visited her home, and showed her the picture of C. R. Bridges; the picture that you have there is the one that I showed her, and she recognized it as the picture of C. R. Bridges. She bore the name of Annie Gully, but her maiden name was Bridges. I found that by her marriage certificate in her Bible and her own statement, and how she is known there through the country—it was general repute that that was her name." The motion for a new trial assigns error upon the admission of this evidence in its entirety, and says that the evidence was inadmissible because it was hearsay. Counsel for the plaintiff in error in his brief argues that the statement that Annie Gully recognized the picture shown her as the picture of her husband was hearsay and improperly admitted. Let it be conceded that this was a valid objection to that much of the testimony. The objection went to the whole of the evidence, and if any part of it was admissible, the objection was properly overruled. See *Penitentiary Co.* v. *Gordon*, 85 *Ga.* 160 (5), 168; *Birmingham Lumber Co.* v. *Brinson*, 94 *Ga.* 517 (1); *Chambers* v. *Wesley*, 113 *Ga.* 343, 344 (2), and cases cited. It appeared from the evidence that the accused had admitted that his real name was Gully, that he had a wife and children living in North Carolina, and that her maiden name was Bridges. It was therefore competent for the witness to testify that at a given place in North Carolina which he had visited, he found a woman with seven children who was reputed in the neighborhood to be named Annie Gully, and that there was a like repute that her maiden name was Bridges. So much of

the testimony offered was admissible.  As to what weight should be given it was an entirely different question.  What this witness said in reference to the picture of Bridges was inadmissible; but as the objection was to the whole testimony and part of it was admissible, the objection was properly overruled.

*Judgment affirmed.  All the Justices concurring, except Lumpkin, P. J., absent, and Candler, J., not presiding.*